BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO (Cal. Bar No. 265481)
Chief, National Security Division
AMANDA B. ELBOGEN (Cal. Bar No. 332505)
Assistant United States Attorney
National Security Division
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorney
Transnational Organized Crime Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3667/5748/0813
     Facsimile: (213) 894-0141
     E-mail:    ian.yanniello@usdoj.gov
                amanda.elbogen@usdoj.gov
                daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 25-1022-MWF |
|---|---|
| Plaintiff, | GOVERNMENT'S *EX PARTE* APPLICATION FOR ENTRY OF PROTECTIVE ORDER |
| v. | |
| AUDREY ILLEENE CARROLL, et al., | [PROPOSED ORDER FILED SEPARATELY] |
| Defendants. | |

Plaintiff, United States of America, by and through its counsel of record, Assistant United States Attorneys Ian V. Yanniello, Amanda B. Elbogen, and Daniel H. Weiner, hereby applies ex parte for a protective order in this case.

//

//

This application is based on the attached memorandum of points and authorities, the proposed protective order, and the files and records in this case.

Dated: January 20, 2026           Respectfully submitted,

                                  BILAL A. ESSAYLI
                                  First Assistant United States
                                  Attorney

                                  IAN V. YANNIELLO
                                  Assistant United States Attorney
                                  Chief, National Security Division


                                         /s/
                                  ────────────────────────────────
                                  IAN V. YANNIELLO
                                  AMANDA B. ELBOGEN
                                  DANIEL H. WEINER
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This is a terrorism case involving an alleged plot to build and detonate improvised explosive devices ("IEDs") at multiple locations across Southern California on December 31, 2025.  A few weeks before the planned attack, the defendants --- AUDREY ILLEENE CARROLL, ZACHARY AARON PAGE, DANTE JAMES ANTHONY-GAFFIELD, and TINA LAI --- traveled to a remote location in the Mojave desert to build and test their bombs.  As the defendants took steps to begin constructing the IEDs, the FBI intervened and arrested the defendants.  Defendants were subsequently charged with Providing and Attempting to Provide Material Support to Terrorists, in violation of 18 U.S.C. § 2339A, and Possession of Unregistered Firearms, in violation of 26 U.S.C. § 5861(d).  The leaders of the plot, CARROLL and PAGE, are also charged with Conspiracy to Use a Weapon of Mass Destruction, in violation of 18 U.S.C. § 2332a.

As a result of its investigation, the government is in possession of highly sensitive material, including: (1) information and statements related to confidential informants and/or cooperating witnesses who may testify at trial ("CI Materials"); (2) personal identifying information ("PII") of real persons; and (3) material that may contain information within the scope of the Privacy Act, 5 U.S.C. § 552a (collectively referred to as the "Protected Information").

To allow the government to produce the Protected Information to defendants, the government circulated a proposed protective order

(the "Protective Order") to defense counsel on January 8, 2026.[1] Counsel for defendant CARROLL stipulated to the entry of the Protective Order; counsel for defendants PAGE, GAFFIELD, and LAI objected to Paragraph 6(i), but otherwise did not object to the Protective Order. For the reasons set forth below, the government respectfully requests that the Court enter the Protective Order.

**II. BACKGROUND**

    **A. DEFENDANTS ARE ARRESTED AFTER TRYING TO ASSEMBLE BOMBS IN THE DESERT ON DECEMBER 12**

On December 12, 2025, defendants traveled to the Mojave desert to construct and test IEDs in furtherance of their New Year's Eve attack plan. (Complaint, ¶ 6.) As the co-conspirators took steps to assemble the bombs, the FBI intervened and arrested the defendants. (Id.) The following day, the government obtained a criminal complaint charging the defendants with federal charges, including Possession of Unregistered Destructive Devices, in violation of 26 U.S.C. § 5861(d). As noted above, a grand jury subsequently returned an indictment with additional charges, including Providing and Attempting to Provide Material Support to Terrorists (against all defendants) and Conspiracy to Use a Weapon of Mass Destruction (against defendants CARROLL and PAGE).

    **B. THE DESERT BOMB TESTING WAS PART OF THE CO-CONSPIRATORS' PLAN TO BLOW UP U.S. BUSINESSES ON DECEMBER 31**

As set forth in the criminal complaint, in late November 2025, CARROLL, a member of the Turtle Island Liberation Front ("TILF"),[2]

---

[1] The Protective Order contains the standard terms agreed to by the USAO and Federal Public Defender's Office.

[2] According to open-source information and other evidence gathered during the investigation, TILF is an anti-capitalist,

4

provided a Confidential Human Source ("CHS") an eight-page, handwritten document titled "OPERATION MIDNIGHT SUN" that described a bombing plot. Another TILF member known as "AK," who was later identified as PAGE, was also present during the meeting. (Complaint, ¶ 5.)

The bombing plan was detailed and designed to inflict substantial damage to the co-conspirators' targets. Specifically, the plan contemplated planting backpacks with "ieds," or Improvised Explosive Devices, to be simultaneously detonated at five locations targeting two U.S. companies at midnight on New Year's Eve 2025 in the Central District of California. (Id.) The handwritten plan stated the "ieds" would be "complex pipe bombs," included instructions on how to manufacture the bombs, and included guidance to avoid leaving evidence behind that could be traced back to the co-conspirators. CARROLL also discussed the prospect of testing the explosives "in the desert" in mid-December 2025. (Id.)

Since the initial meeting where the bomb plot was discussed, CARROLL and PAGE recruited other co-conspirators to the plot, including LAI and GAFFIELD. (Id., ¶ 6.) On or about the early morning of December 7, 2025, the CHS and an undercover law enforcement officer ("UCE") met with CARROLL, PAGE, and GAFFIELD. CARROLL stated she had "the plan" and handed it to GAFFIELD, which he and the UCE both reviewed. (Id., ¶ 17(a).) Following GAFFIELD's review of the attack plans, CARROLL asked GAFFIELD whether some of his "comrades" would be on his team. GAFFIELD responded by confirming he would see if others were interested in

---

anti-government movement that advocates for violence against United States officials. (Complaint, ¶¶ 8-9.)

participating in the plot. (Id., ¶ 17(b).) The co-conspirators then discussed the operation, including bomb-making components that CARROLL had already acquired and other co-conspirators who would participate in the attack. (Id., ¶ 17(c)-(f).) During the meeting, the co-conspirators also discussed obtaining guns, seeking firearms training, and plans for future attacks after the New Year's Eve bombings, namely, plans to target federal law enforcement agents and vehicles with pipe bombs, with CARROLL noting "that would take some of them out and scare the rest of them." (Id., ¶ 17(g)-(i).)

### C.  DEFENDANTS USED AN ENCRYPTED MESSAGING APPLICATION TO CONTINUE PLANNING THE BOMBING ATTACK

The co-conspirators, including GAFFIELD, CARROLL, PAGE, and LAI, used a messaging group on the Signal application titled "Order of the Black Lotus" to further their plot. For example, on December 5, 2025, CARROLL wrote that the Black Lotus Signal group was "our group for everything radical[.]" (Id., ¶ 18.)

Among other things, the co-conspirators used the Black Lotus group chat to discuss the bombing plot, including their plan to test explosive devices in the desert on December 12. On or about December 5, 2025, CARROLL forwarded instructions to the CHS for the desert explosive testing that were originally posted in the Black Lotus group by PAGE. The instructions included geocoordinates for the planned camp site, which correspond to a location in the Mojave Desert, specifically the Lucerne Valley. The instructions included a screenshot of a satellite map with markings depicting "where we will set up camp (C on the map above) and where we will test (T on the map above)." (Id.)

PAGE provided additional instructions to the group, including to "please have a burner phone (no phones besides burners and all phones except navigators to be wrapped in foil or a faraday bag for the entirety of the trip) and install OsmAnd. It is an open source maps, so no corporate tracking." That same day, GAFFIELD confirmed "I have a few burners / But im saving for the big event / The big party [celebrate emoji]." (Id.) The group also discussed bringing large PVC pipes to the desert for testing. For example, in response to CARROLL asking the group "someone's getting the wider diameter pvc too right? I have 13 of the 1 inch / 2.5 cm diameter already cut," LAI responded: "Yeah I need to get that. Can you remind me what diameter I need to bring?" CARROLL responded, "3, 4, or 5 inch" and "maybe a small amount of each if you can find some." (Id.)

### D. THE PROPOSED PROTECTIVE ORDER

On January 8, 2026, the government notified defense counsel about the need for a Protective Order in this case. On the same day, the government circulated the Protective Order and asked counsel to provide their position so that the government could seek entry of the Protective Order via an *ex parte* application.

Based on responses from defense counsel, defendants indicated the following position on the Protective Order:

- Defendant CARROLL has no objection to the Protective Order;
- Defendants PAGE, GAFFIELD, and LAI object to Paragraph 6(i), specifically, the requirement that only designated persons --- rather than the entire defense team --- be permitted to review CI Materials with the defendant.

### III. SAFEGUARDING CONFIDENTIAL INFORMANT INFORMATION IS NECESSARY

Paragraph 6(i) of the Protective Order is necessary to protect the safety of confidential informants and/or cooperating witnesses who may testify at trial.[3]  In determining whether a protective order is appropriate, courts may consider a variety of factors, including the "safety of witnesses and others" and "a particular danger."  Fed. R. Crim. Proc. 16 advisory committee's note to 1966 amendment; see also United States v. Dent, No. SA CR 16-29(B)-CJC, 2017 WL 1025162 (C.D. Cal. Mar. 15, 2017).

The rationale behind the provision is simple: avoiding an unnecessary risk in exposing the identity of witnesses to a crime who have cooperated with the government, potential dissemination of their written and/or recorded statements, and the resulting risk to their and their family's safety and/or exposure to witness intimidation.  In recognition of this appreciable risk, courts routinely approve the same or even more stringent provisions (e.g., permitting only defense counsel to review CI materials with a defendant).[4]  Indeed, the routine nature of the provision is underscored by an agreement between the USAO and the Federal Public

---

[3] See Fed. R. Crim. P. 16, advisory committee's note to 1974 amendment ("[I]t is obvious that [a protective order] would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed."); see also ABA Standards for Criminal Justice Discovery and Trial by Jury, Commentary to Standard 11-6.5 (3d ed. 1996) ("[T]he provisions of the protective order may be designed to protect a victim or witness ....").

[4] See, e.g., United States v. Diaz-Rodriguez, No. 2:24-cr-237-RGK, Dkts. 14, 20 (C.D. Cal. Aug. 2, 2024); United States v. Ortiz, No. 2:22-cr-401-MCS, Dkts. 27, 41 (C.D. Cal. Dec. 5, 2022); United States v. Barajas, et al., No. CR 8:21-94-FLA, Dkts. 36, 38 (C.D. Cal. Nov. 15, 2021).

Defender's Office as to the entirety of the government's proposed protective order, including Paragraph 6(i).

But even if the provision was not routine (it is), the risk in this case is more pronounced than in many of other cases. This is due to the defendants' charged conduct and alleged ties to an extremist group that plotted to carry out a bombing attack against multiple U.S. targets. Accordingly, the government has significant concerns about the safety of any individual identified as a cooperating witness and/or their family in this case. Public disclosure of the cooperating witness information may also jeopardize the government's ongoing investigation related to unindicted co-conspirators who may have assisted defendants.

The objecting defendants propose changing Paragraph 6(i) to permit *any* defense team member to review CI Materials without prior approval or notification to the government. However, Paragraph 6(i) already permits a streamlined process for defense counsel to designate members of the defense team as "designated persons" who will then be vetted by the government --- and approved absent a legitimate objection or basis to withhold consent.

Moreover, any burden from requiring defense counsel (or a designated person) to be present when defendant is reviewing these materials is warranted by the significant countervailing concerns for safety, described above, and is far less restrictive than other limitations the Ninth Circuit has permitted when it comes to protecting cooperating witnesses. See United States v. Shryock, 342 F.3d 948, 983 (9th Cir. 2003) (protective order allowing the government to provide defense counsel with one copy of covered documents to be kept in a secure location accessible only to defense

9

counsel was reasonable under circumstances).  Accordingly, whatever minimal burden this provision places on defense counsel and/or the defendant is far outweighed by the significant countervailing interest in ensuring that the protective order operates as intended.

**IV.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court enter the Protective Order filed concurrently herewith.