JOHN NEIL McNICHOLAS, ESQ.
STATE BAR #138304
McNicholas Law Office
464 Palos Verdes Blvd.
Redondo Beach, CA 90277
(310) 545-0780
(310) 546-6831- FAX
john@mcnicholaslawoffice.com

Attorney for Zachary Page (#2)

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CARROLL, et al.,<br><br>ZACHARY PAGE (#2),<br><br>Defendant. | Case No. 2:25-cr-1022-MWF-2<br><br>**DEFENDANT ZACHARY PAGE'S PARTIAL OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION FOR PROTECTIVE ORDER [ECF # 59]**<br><br>No Hearing Requested |

Defendant Zachary Aaron Page,[1] hereinafter referred to in this opposition as "Page," by and through her attorney of record, JOHN NEIL McNICHOLAS, hereby submits a partial opposition to the government's *ex parte* application for protective order, ECF # 59. This opposition is made and based upon the following memorandum of points and authorities.

DATED: January 21, 2026   Respectfully submitted,

        */s/ John Neil McNicholas*
        JOHN NEIL McNICHOLAS

        Attorney for ZACHARY PAGE

---

[1] Zachary Page prefers to be known as Faye Page, and requests that the Court recognize her as "she/her/hers"

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF ARGUMENT

Page does not object to the appropriateness of a protective order in this case and has agreed to most of the government's proposed order. However Page objects to certain terms which impedes Page's Constitutional rights to prepare and present a defense at trial. Specifically, Page objects to the requirement in Paragraph 6(i) that the defendant may only review her confidential discovery with defense counsel present or with pre-approved members of the defense team.

## II.   LEGAL STANDARD

Under Rule 16, a court may, "for good cause, deny, restrict, or defer discovery or inspection or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1).  Good cause for a protective order requires a particularized and specific showing of need.  *See United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007).

## III. ARGUMENT

## A.    The Defendant and Potential Witnesses Should be Permitted to Review Confidential Material with Any Member of the Defense Team Without Seeking Pre-Approval from the Government.

If defense counsel wishes to enable defendants to review CI Materials in the presence of any person on the Defense Team other than defense counsel, defense counsel shall submit a letter to government counsel of record identifying that person (the "designated person"). Alternatively, defense counsel may maintain a list of Defense Team members with the USAO and will be notified if such individuals are preapproved to serve as designated persons.

Government proposed protective order, Paragraph 6(i). Paragraph 6(i) of the proposed protective order provides that a defendant may only review confidential informant ("CI") materials in the presence of counsel or an approved member of the defense team. The government's proposal would either require defense counsel to be present at all times, or require the defense to submit a list of defense team members for pre-approval by the government in its sole discretion, along with a copy of the protective order signed by each designated person. *Id.* at ¶6(i). The provisions would unduly burden Page's Sixth Amendment right to effective assistance of counsel and impede on the work product of the defense.

1.      **Requiring Defense Counsel's Presence Unnecessarily Burdens Page's Right to Effective Assistance of Counsel.**

The government appears to believe that other members of the Defense Team are incapable of ensuring that the terms of the protective order are followed. *See* ECF No. 59 at 8-9. The proposed protective order defines "Defense Team" to include counsel of record, defense investigators, retained experts or potential experts, and paralegals, legal assistants, and other support staff to defense counsel who are providing assistance on this case. ECF No. 59-1 at ¶6(d). Every one of those members have been appointed by the Court pursuant to the Criminal Justice Act, and work under the direction of defense counsel—an officer of this Court. They have experience working with CI/UC Materials because a significant portion of cases handled by members involve such materials. Thus, they are more than capable of reviewing CI/UC Materials with Page and potential witnesses, while at the same time ensuring that the requirements of the protective order are followed. The government comes forward with *no* evidence that any CJA-appointed defense teams have mishandled CI/UC Materials in the absence of the burdensome provision it now requests.

Moreover, under *other* provisions of the government's proposed protective

3

order, the very same members of the Defense Team are permitted to handle CI/ PII Materials without defense counsel supervision. *See, e.g.*, ECF No. 59-1 at ¶6(g) ("Defendants and the *Defense Team* shall use the Confidential Information solely to prepare for any pretrial motions, plea negotiations, trial, and sentencing hearing in this case, as well as any appellate and post-conviction proceedings related to this case.") (emphasis added); *id.* at ¶6(h) ("The *Defense Team* shall not permit anyone other than the Defense Team to have possession of Confidential Information, including defendant, while outside the presence of the Defense Team.") (emphasis added).

Thus, under the government's own proposed provisions, there is no good cause to distinguish between defense counsel and the defense team in the context of reviewing CI/UC Materials with the defendant or witnesses. Requiring counsel to be present also implicates Page's Sixth Amendment right to effective assistance of counsel, as well as her due process right of access to the courts. The government's proposed provisions impose on defense counsel the unduly burdensome obligation of being present for review of CI/UC Materials, even when the task could easily be handled by another member of the Defense *Team* such as a paralegal or investigator. As one court explained with respect to prison regulations specifying that inmate interviews could only be conducted by attorneys of record:

> If attorneys of record must interview their clients personally ... the time spent traveling would necessarily prohibit them from spending as much time working on legal problems. Conversely, if attorneys can send assistants with detailed instructions to interview inmates, they will have more time available to evaluate the contentions raised and prepare the necessary legal documents. It follows that each inmate-client will receive better legal assistance, thus facilitating his access to the courts. Moreover, attorneys would have more time to serve additional clients who might otherwise have to rely on jailhouse

lawyers. The potential benefits to inmates, attorneys and the courts
from permitting attorneys to send law students or other para-
professionals to interview inmates are obvious.

*Martinez v. Procunier*, 354 F. Supp. 1092, 1098 (N.D. Cal. 1973), *aff'd*, 416 U.S. 396
(1974)(finding violations of the Fifth and Fourteenth Amendments). Unnecessary time
spent by counsel during discovery review—solely for the purpose of ensuring
compliance with the protective order—detracts from time that defense counsel could
spend preparing other aspects of Page's defense. *See United States v. Conception*, 651 F.
Supp. 3d 1158, 1163 (C.D. Cal. Jan. 17, 2023) (finding this provision "unduly
burdensome" because, among other issues, "it would take away from defense counsel
precious time that counsel could spend on other aspects of the representation, to say
nothing of counsel's representation of other clients").

As to potential witnesses, defense investigators need the flexibility to speak
with witnesses as they become available, which is often on the spot without a pre-
arranged appointment. Investigators frequently wait in the field—which can be out of
town, out-of-state, or even in other countries—for hours or days at a time attempting
to speak with witnesses. It is wholly unrealistic and burdensome to require an
investigator to wait for defense counsel to be available in order to discuss an item of
protected discovery with a witness.

Nor are the government's proposed provisions fair. Nowhere in the
government's protective order is the Assistant United States Attorney required to be
present during witness interviews involving CI Materials. The defense should not be
subjected to any greater restrictions than the prosecution.

**2.      The Government's Alternative of Requiring Pre-approval in its Sole Discretion Is a Non-starter.**

The government proposes at paragraphs 6(i) that should defense counsel wish to allow the defense team to show protected CI Materials to Page or to a potential witness, defense counsel would (a) first have to identify his team members in writing to the government, and (b) the team member would only then be able to work with CI Materials with the defendant or witnesses if the government finds the designated person acceptable.  ECF No. 59-1 at ¶6(i).  Instead of acknowledging the burden it seeks to impose, the government attempts to characterize these provisions as an accommodation to the defense.

The government's proposal would require Page to disclose the members of the defense team to the government and to seek her adversary's *permission* to review key discovery with them.  Then the government, in its *sole discretion—i.e.*, for any reason or no reason—could prevent Page from doing this at all. Page and her counsel acknowledge the obligation to protect sensitive information.  But the "very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *United States v. Danielson*, 325 F.3d 1054, 1066 (9th Cir. 2003) (quoting *United States v. Cronic*, 466 U.S. 648, 655 (1984)).  A provision that gives the prosecutor full and arbitrary control over which members of the defense team  may work on a particular case, and how they may do so, is not only unnecessary, it is anathema to the adversarial system.

The government has no legitimate need to monitor when and how the defense team, acting under the direction of a Court-appointed attorney and officer of the

Court, chooses to provide Page representation. *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947) ("In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel"). Notably, as federal contractors, counsel and defense team members have undergone required background checks. The government is not so burdened in its preparations: it is not required to seek pre-approval from its adversary as to who and how it can prepare its case. The government team is entitled to no superior standing than the defense team. Moreover, it is not always clear at the outset of a case who within the defense team will be working on a particular matter, and staffing can change over time. The government's proposal would therefore require the defense team to not only seek pre-approval for its members to review CI/UC Materials with the defendant or witnesses, but also to keep returning to the government if staffing changes—each time revealing protected work product information to the government, and putting the government at an unfair advantage.

As an example, it would violate the work product privilege and reveal Page's theory of defense long before trial if the defense had to ask permission for an expert or potential expert it was thinking about retaining to review protected materials with her. And if the government rejected in its sole discretion that expert from reviewing CI/UC Materials with Page, it could infringe on her Constitutional rights to present a defense and to call witnesses in her favor. Additionally, the wholesale delegation to the government over which members of the defense team are "acceptable" for a given task is contrary to the Sixth Amendment. For example, in *Sonza v. Travisono*, 368 F. Supp. 959 (D.R.I. 1973), *aff'd*, 498 F.2d 1120 (1st Cir. 1974), the Court held that a prison policy prohibiting inmates from meeting with law students violated inmates' due process right to effective access to the courts. In support of its holding, the court

highlighted the Sixth Amendment concerns arising from limitations on defense counsel's use, and choice, of agents:

> In circumstances in which a prisoner's Sixth Amendment right to counsel is involved, not only must an attorney be given the broadest possible opportunity to meet and confer with his inmate client but the same right as of necessity filters down to his paralegal assistants. And the right to select such assistant rests with the attorney and not the prison officials. If this were not so it could seriously impair the inmate's Sixth Amendment right. . . . The alter ego status of para-professionals parallels that of the principal whether it be in the exercise of due process access of the court of the fundamental right to the counsel.

*Id.* at 970–71.

Contrary to the government's suggestion that its proposal is "standard," ECF No. 59 at 4, fn 1, the government has *stipulated* that members of the defense team may review protected materials with the defendant and witnesses in other cases. *See, e.g.,* *United States v. Triefenbach*, 21-cr-00133-JVS, ECF No. 28 at ¶¶ 4(i) & (k) (C.D. Cal. Dec. 13, 2021) (agreeing to allow other members at defense counsel's office to review CI Materials with the defendant in a case charging conspiracy, unlicensed dealing of firearms, distribution of narcotics, and felon in possession of firearms and ammunition); *United States v. Alonso*, 22-cr-00530-DOC, ECF No. 30 at ¶¶ 7(e) & (g)(C.D. Cal. Dec. 15, 2022) (stipulating that other members at defense counsel's office may review CI Materials with the defendant in a case charging conspiracy to engage in unlicensed dealing of firearms, unlicensed dealing of firearms, illegal possession of machineguns, felon in possession of firearms and ammunition, and distribution of methamphetamine, fentanyl, and cocaine); *United States v. Domingo*, 19-cr-00313-SVW, ECF No. 30 at ¶¶ 6(h) & (i) (C.D. Cal. Jul. 3, 2019) (stipulation that members of the defense team may review CI Materials with defendant in case charging providing material support to terrorists and attempted use of a weapon of mass destruction where, unlike in the instant case, evidence showed defendant intended to kill or seriously injure Americans); *United States v. Navarro*, No. 22-cr-63-JWH, ECF No. 30 at ¶¶ 6(i) &

(l) (C.D. Cal. Apr. 19, 2023) (government did not dispute and therefore agreed that members of the Defense Team may review CI Materials with the defendant). The government has failed to show good cause for its unduly burdensome provisions requiring defense counsel to be present at meetings with defendant or witnesses involving CI Materials.

**IV. CONCLUSION**

For the foregoing reasons, Zachary Page respectfully requests that the Court partially reject the government's proposed protective order and instead enter the defense's modified protective order attached hereto as Exhibit A.

DATED: January 21, 2026                    Respectfully submitted,

                                           */s/ John Neil McNicholas*
                                           JOHN NEIL McNICHOLAS

                                           Attorney for Defendant ZACHARY PAGE